After Judge Roane had delivered his opinion, and Haywood, J., had concurred, M'Kinney moved the Court to suspend judgment till next term, that further argument might then be brought forward, and the New York and other cases might then be produced and their reasons examined and deliberated upon.
It is as much the duty of a judge to cause his judgment to be carried into effect when he has no reasonable doubt pressing on his mind, as it is to suspend it when he has, and I can not say that my mind is affected with any reasonable doubt. If we ought to respect the opinions given by the judicatures of other States, as we undoubtedly ought, we ought also, and perhaps equally, to respect the opinions of these legislators who, from the time of the first Congress to the first decisions we are invited to reflect on, have viewed the judicial power of the Union, so far as regards controversies between citizens of different States, or the United States and a citizen, as concurrent with the judicial power of the States, except in those instances where Congress might render it exclusive. How many cases are left by the judicial law of 1789 to be decided by the State *Page 53 
judiciaries? The causes which produced the judicial power of the Union are such as did not require exclusion in all cases. If the citizens' of another State, whether foreign or domestic, had it in his option to try his cause either in a State or federal court or where defendant, to remove it at pleasure from a State court into a federal court, he could not then complain of the partialities of State courts, or of any injustice done to him therein; for immediately he could be met with the remark that he might have avoided such partialities by going into a court of the Union, which is supposed not to be influenced by them. As to the notion that our courts can not execute the laws of another sovereignty, surely the laws of the United States, made by Congress upon subjects submitted to their government by the Constitution, are as much laws of our own as those made by our own legislature. Do we not make them ourselves? Do we not appoint the legislators and president? Are they not our representatives intrusted with the regulation and care of our interests, for the purpose of procuring the public welfare and prosperity? Are we not sworn to support them? Is it not our duty to obey and carry them into effect? Are we not bound in conscience, and as good citizens, to aid in the support of them? Whenever the time comes when the laws of the Union shall be disobeyed and looked upon as the laws of a foreign sovereignty, and when all our courts and judicial officers withdraw from them sustentation, then that anarchy, with its threatening aspect, will come again which shortly proceded the formation of the present Constitution. United by no common head, we shall pursue as many different courses as there are States, and be divided and separated into disunited portions, never to be again drawn together by sound principles, but only by the despotism of the sword. A judge has no right to be a politician; but when such are the consequences of disregard to the laws of the Union, *Page 54 
it is not improper to contemplate them, that thereby he may feel an invigorated desire to execute them. And in the case now before us, what has the defendant to complain of? His ease and convenience are consulted; instead of being sued to a federal court sitting one hundred or two hundred miles from his own residence and neighborhood, he is carried into a court in his own county, held by one of his neighbors, perhaps with whom he has lived on terms of friendship from his infancy; his cause is left to a jury of his acquaintances and friends living in the same county with him. Had he rather go to a federal court and there be tried? Is it to be apprehended that he will be less rigorously dealt with in a federal court than in the court of his own county? If we were legislators we should endeavor to procure for our people the benefit of a trial before our own courts. Shall we, as lawyers, say it is oppressive? If the United states are willing that infractions of their penal laws shall be heard and adjudged in our own courts, shall we say no? The Constitution guards against the evasion of penal laws by giving, when necessary, a power to the courts of the Union to inflict the penalties ordained; and, therefore, whether necessary or not, we shall insist that this grant of power is absolute and unconditional, and that our citizen shall go into a court of the Union to have his cause decided at the same time that the United States wish to be accommodated by a domestic tribunal at his own door and in the midst of his friends. If our citizens, were deprived of a right to be heard in a State court, and should be carried to a tribunal far from his home and connections, it might look like reason to complain that Congress was more apprehensive of our partialities in favor of our countrymen than need be, and made an earlier and more use of its power than the Constitution contemplates, which is only so much interposition of federal jurisdiction as is barely sufficient to secure the observance of its laws. But to *Page 55 
say that the noninterference of federal jurisdiction is a hardship, prohibited by the Constitution, is, indeed, in my judgment, a novelty.
No man values more highly than I do the New York decisions.
Why say that this grant of judicial power is absolute and exclusive, when the cause and reason of it is not so, and when the words of the Constitution do not require it so to be considered? Suppose no judicial power had been given to the Union; or a judicial power not extending to the penalties created by laws of the United States; what, then? Would not the State courts have carried the law into execution? And is not this precisely the state of things when Congress, having a power to order or not to order the courts of the Union to take cognizance, have omitted to do so, and have intentionally left this matter, as it would stand without the interference of the Federal Constitution? Are not at all the powers reserved to the States which are not expressly taken from them by the Constitution? And is the power in question taken from them till Congress thinks proper to appropriate it exclusively to the courts of the Union? If I give you a power of attorney to sell my land, is it not mine till you have executed the power of selling? If I authorize you by a declaration of uses to be made by yourself to appropriate it exclusively to yourself, is it not mine till the declaration be made? Is not such portion of it as is not included in the declaration mine still? I will not speak of the consolidation which is taken of. The dread thereof is an illusion which exists in the imagination only. An appeal in any shape to the Supreme Court of the Union, in the few cases we are contemplating in which the judicial power need not be exclusive, and is not so., will never lead, as an appeal in all cases and over all causes might, to an extinction of State sovereignties, and the consolidation of all State powers into one great mass. I do greatly *Page 56 
respect the opinion of the General Court of Virginia; I see in that State the most illustrious characters, the ornaments of mankind; much to imitate, and much to praise; but, so far as they contradict the opinion now given, I must say, Cato amicus, et Plato amicus; sedmajor amicus veritas.